## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PLANET AID,
a Massachusetts nonprofit corporation,

          Plaintiff,

v.
                               Case No. 14-CV-11472
                               Honorable Denise Page Hood

YPSILANTI TOWNSHIP,
a Michigan municipal corporation,

          Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [#4]

This matter is before the Court on Plaintiff Planet Aid's motion for a preliminary injunction. This case concerns Plaintiff's allegation that the Defendant's zoning ordinance interferes with the Plaintiff's use of donation bins to collect items for its business. Now before the Court is the Plaintiff's Motion for a Preliminary Injunction **[Docket No. 4, Filed April 14, 2014]** in which Plaintiff moves the Court to prevent the Defendant from forcing the removal of the Plaintiff's donation bins from the Township.

On April 16, 2014, the Court entered an Order Granting Plaintiff's Motion for a Temporary Restraining Order. The Court held a hearing on the instant Motion on

May 23, 2014. Prior to the hearing, Defendant filed a Response to this Motion **[Docket No. 11, filed May 9, 2014]** and Plaintiff filed a Reply. **[Docket No. 12, filed May 16, 2014]** Plaintiff also filed Supplemental Authority on May 20, 2014. **[Docket No. 13]** Following the hearing, Defendant filed two additional affidavits. **[Docket Nos. 15, 16]** For the reasons discussed below, Plaintiff's Motion for Preliminary Injunction is **DENIED** as the Court determines that Plaintiff has failed to show a likelihood of success on the merits of its claim that the Defendant's zoning ordinance violates the Plaintiff's constitutional rights.

## I. BACKGROUND

Planet Aid is a nonprofit corporation that operates and maintains donation collection bins at which individuals can donate their clothing, shoes and textiles. **[Docket No. 4, p. 3]** Planet Aid distributes the items collected in its bins to organizations in other countries. **[Id.]** Planet Aid began placing donation bins throughout the Township in 2008. **[Docket No. 11, p. 1]** Planet Aid's donation bins are placed on private business properties after obtaining permission from a property owner or business partner. **[Docket No. 4, p. 3-4]**[1] Since 2008, the Plaintiff has

---

[1] In contention with this assertion by Plaintiff, Defendant filed an affidavit from Seung Kang who is "the owner of Chick Inn Drive In restaurant located at 501 Holmes Rd, in the Charter Township of Ypsilanti." **[Docket No. 15, p. 1]** Kang stated that she "had not given Planet Aid permission to place the donation

2

placed sixteen donation bins on eleven properties in the Township.  **[Docket No. 4, p. 5]**  The Plaintiff has rental contracts with two property owners, Grenadier Properties Paint Creek North LLC and Hutton Management Services LLC, to place seven of the sixteen donation bins on these properties.  **[Id.]**

The Township enacted a zoning ordinance prior to Planet Aid's presence in the Township.  The Township Zoning Ordinance, Section 2101.Scope provides:

> No building or structure, or part thereof, shall hereafter be erected, constructed or altered and maintained, and no new use or change shall be made or maintained of any building, structure or land, or part thereof, except in conformity with the provisions of this ordinance.

The Ordinance institutes site plan review procedures which state:

> provide a consistent and uniform method for review of proposed development plans, to ensure full compliance with the standards contained in this section, other applicable local ordinances, standard engineering practices, and county, state, and federal rules, and laws.  The procedures set forth herein are further intended to:
>
> > (a) Achieve efficient use of the land;
> > (b) Protect natural resources;
> > (c) Minimize adverse impacts on adjoining or nearby properties;
> > (d) Provide a mechanism for review of new development and redevelopment or reuse of existing

---

box in the parking lot of [her] business."  **[Id.]**

3

sites to ensure compliance with current standards; and,

(e) Encourage cooperation and consultation between the township and the applicant to facilitate development in accordance with the township's land use objectives.

**[Docket No. 11, Ex. I, Zoning Ordinance Section 2115(1)]**

The Ordinance further states that unless a project is exempt from site plan review, "a building permit shall not be issued until a site plan or sketch plan [has been] approved in accordance with" the zoning ordinance. **[Docket No. 11, Ex. I, Zoning Ordinance Section 2115(2)]** The Ordinance expounds that it is the "responsibility of the owner of a property for which site plan approval has been granted to maintain the property in accordance with the approved site design on a continuing basis until the property is razed, or until new regulations supersede the regulations upon which site approval was based, or until a new site design approval is sought." **[Docket No. 11, Ex. I, Zoning Ordinance Section 2115(3)(k)(3)]** The Ordinance notes that "[s]uch maintenance shall include all building and site elements depicted on the site plan including parking configuration [and that] [a]ny owner who fails to maintain a site as approved shall be deemed in violation of the applicable use provisions of this section and shall be subject to penalties." **[Id.]**

4

The ordinance allows for appeal of a site plan denial. "Either the township community and economic development department or the applicant shall have the option to request sketch plan review by the planning commission." **[Docket No. 11, Ex. I, Zoning Ordinance Section 2115(4)]** "Appeals may be taken by the person, firm or corporation aggrieved" and "a variance in the zoning ordinance may be applied for and granted under section 4 of the Uniform Condemnation Procedures Act." **[Docket No. 11, Ex. I, Zoning Ordinance Section 2402]**

The Zoning Ordinance requires all accessory structures installed by property owners to comply with the ordinance. **[Docket No. 11, p. 1]** Under the Township's existing zoning regulations, donation bins require site plan approval. **[Docket No. 11, p. 2]** As noted above, in order to obtain site plan approval, a property owner with a donation bin on its property can either request a variance from his or her site plan or challenge the enforcement of the planning commission's decision to remove the bins. **[Docket No. 11, p. 5]**

On April 8, 2014, the Defendant's Community Ordinance Officer, Mark Heppner, contacted the Operations Manager for Planet Aid in Michigan, Brian Hinterleiter, to inform him that the Township investigated several donation bins in the Township and found that none of the property owners sought site plan approval

5

for the donation bins. **[Docket No. 11, p. 3-4]** Following Hinterleiter's discussion with Heppner, Hinterleiter contacted the Township Supervisor, Brenda Stumbo, and the Township Attorney, Angela King, to set up meetings to discuss the Township's enforcement of the zoning ordinance. **[Docket No. 4, p. 7-8]** There is a dispute as to whether the Township's representatives told Hinterleiter that the zoning ordinance's enforcement was intended to ban all donation bins because there were too many in the area. **[Docket No. 4, p. 6]**

Plaintiff claims that it made several attempts to set up a meeting between the two parties. Following these attempts, Plaintiff filed a complaint on April 11, 2014, alleging that the Defendant-Township's ban on donation bins constitutes several violations of the Plaintiff's constitutional rights. **[Docket No. 1]** Following the filing of Plaintiff's Complaint, Plaintiff filed a Motion for Temporary Restraining Order on April 14, 2014. **[Docket No. 4]** The Court granted this motion on April 16, 2014. **[Docket No. 6]** Now before the Court is Plaintiff's Motion for Preliminary Injunction.

## II.    ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 65(a) reads, in relevant part, as follows:

6

(a)     Preliminary Injunction

(1)     Notice. The Court may issue a preliminary injunction only on notice to the adverse party.

(2)     Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for preliminary injunction, the Court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the Court must preserve any party's right to a jury trial.

When determining whether to issue a preliminary injunction, the Court considers four factors: (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a temporary restraining order or preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the temporary restraining order or preliminary injunction. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992). These factors are not prerequisites, but must be balanced in determining whether to deny or grant injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). The first factor is the most critical inquiry of the four criteria. *Mason County Med. Ass'n v. Knebel*, 563 F.22d 256, 261 (6th Cir. 1977).

7

## B. Discussion

### i.    *Likelihood of Success on the Merits*

First, the Court must consider whether the Plaintiff has a strong likelihood of success on the merits of its claims. After review of the documents provided to the Court, the Court concludes that the Plaintiff has not shown a strong likelihood of success on its Free Speech claim, its Dormant Commerce Clause claim, its Impairment of Contracts claim, or its claim under 42 U.S.C. §1983.

### a. Free Speech

Plaintiff alleges that the Defendant's zoning ordinance violates its right to free speech under the First Amendment of the U.S. Constitution. U.S. Const. amend. I. The Court finds that the Plaintiff has not shown that it is likely to prevail on this claim because the language of the zoning ordinance does not create a complete ban on donation bins within the Township.

The Plaintiff argues that the Defendant's zoning ordinance violates its First Amendment right to solicit charitable donations thereby violating Plaintiff's rights to free speech. **[Docket No. 4, p. 12]** It is well established that charitable donations qualify as a form of constitutionally protected speech, and that a governmental entity may restrict this right only with narrowly drawn regulations. *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980). Neither party disputes that the

8

Plaintiff's solicitation of charitable donations is protected free speech or that the Defendant-Township has some authority to regulate this type of activity. **[Docket No. 4, p. 13; Docket No. 11, p. 11, 13]** The Plaintiff argues that the Court should subject the Defendant's zoning ordinance to strict scrutiny because the regulation restricts constitutionally protected free speech. **[Docket No. 4, p. 12]** Under the strict scrutiny standard, an ordinance that restricts free speech must be narrowly tailored to achieve an important government interest without unnecessarily infringing on First Amendment freedoms. **[Docket No. 4, p. 13]** The Plaintiff argues that the Defendant's zoning ordinance is not narrowly tailored because it bans all donation bins, and the ordinance is not the least restrictive means of achieving the Defendant's goals. **[Docket No. 4, p. 15-16**]

In response, the Defendant argues that the language of the zoning ordinance does not ban all donation bins within the Township. **[Docket No. 11, p. 8]** The Defendant argues that the donation bins constitute accessory structures which are permissibly regulated by the Defendant's zoning ordinance. **[Docket No. 11, p. 3]** The Defendant denies that the enforcement of the zoning ordinance bans all donation bins. **[Docket No. 11, p. 8]** The Defendant argues that the Plaintiff's facial challenge to the zoning ordinance is invalid because the Plaintiff cannot establish that the

Defendant's zoning ordinance itself is unconstitutionally invalid. **[Docket No. 11, p. 13]** The Defendant urges the Court to rely on *Jobe v. City of Catlettsburg* in deciding if the Defendant's zoning ordinance can survive a First Amendment challenge. Defendant contends that the Ordinance is constitutional and should survive Plaintiff's First Amendment challenge because it is: (1) content neutral; (2) serves a significant government interest; (3) is narrowly tailored to serve that governmental interest; and (4) leaves open ample alternative channels of communication. *Jobe v. City of Catlettsburg*, 490 F.3d 261, 267 (6th Cir. 2005).

The Court determines that Plaintiff has not shown it will prevail on this claim. The zoning ordinance does not place an outright ban on all donation bins in the Township. The Court is unpersuaded that the strict scrutiny standard should be applied to determine the constitutionality of the Defendant's zoning ordinance because the Plaintiff has not cited any language in the Defendant's zoning ordinance that places a total ban on all donation bins. **[Docket No. 11, p. 11]** It is well established that municipalities are allowed to place direct and substantial limitations on protected free speech activity. *Schaumburg*, 444 U.S. 620. The Court is satisfied that a complete ban on the placement of donation bins within the Township would likely require a strict scrutiny analysis as Plaintiff's fundamental first amendment right to free speech would be challenged. However, here, the Ordinance limiting the

placement of donations bins within the Township does not constitute a complete ban

and does not restrict Plaintiff's fundamental right to free speech in a manner not

allowed by the law.

Finding that strict scrutiny is not applicable because the Defendant has not

placed a complete ban on the placement of donation bins,[2] the Court will rely on *Jobe*

---

[2] The Court notes that even assuming, arguendo, strict scrutiny applies in this situation, it is still unpersuaded that Plaintiff has a likelihood of success on the merits of its claims on the information currently before the Court. Based on what has been provided to the Court, Plaintiff has failed to show how the Zoning Ordinance is not justified by a compelling state interest and narrowly tailored to achieve that goal. Further, Plaintiff has not shown that Defendant fails to provide alternate means for Plaintiff to place its donation bins within the Township. Plaintiff has not argued that it applied to place bins within the township (or that a property owner asked on its behalf) and was denied access. Additionally, Plaintiff does not contend that following denial, it appealed and was again denied. Plaintiff has not availed itself of the alternate means available to place donation bins within the Township and because Defendant's Ordinance appears on its face to be a content neutral, time, place, and manner regulation on placement of bins within the Township, on the information now before the Court, Plaintiff has not shown that the Ordinance cannot survive strict scrutiny analysis.

The Court also notes that the instant case is distinguishable from the case that Plaintiff provided to the Court, *Planet Aid v. City of St. Johns*, No. 1:14-CV-149 (W.D. Mich. 2014). In *St. Johns*, the City of St. Johns notified Planet Aid that its donation boxes must be removed because they were "both a public nuisance and a violation of [the] zoning ordinance re accessory uses." At that time, the city did not have any ordinances in place that supported their contention that the bins required permission to be placed or that they were deemed to be a nuisance in all instances. During a meeting on December 9, 2013, the St. Johns City Commission recommended "a total prohibition" on donation bins within the city which the Commission voted unanimously to introduce at its next meeting. On January 27,

*v. City of Cattlesburg* to determine whether the Defendant's zoning ordinance is a

reasonable regulation of speech that survives the Plaintiff's constitutional challenge.

_____

2014, the City Commission voted unanimously to adopt an ordinance regarding the placement of donation bins within the city. The Ordinance stated in relevant part that "[n]o person, business or other entity shall place, use or allow the installation of a donation box within the City of St. Johns." Title VX, Chapter 155 of the St. John's Zoning Ordinance.

In her Opinion and Order Granting Plaintiff Planet Aid's Motion for Preliminary Injunction, the Honorable Janet T. Neff noted that "[c]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Schaumburg*, 444 U.S. at 633. The court further asserted that "public receptacles are not mere collection points for unwanted items, but are rather silent solicitors and advocates for particular charitable causes." *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 213 (5th Cir. 2011). The court determined that the "balance of factors weigh[ed] in favor of preliminary enjoining the City from enforcing [the] Ordinance . . . against Planet Aid" because Plaintiff met its "burden of proving a substantial likelihood of succeeding on the merits of its free speech claim." *City of St. Johns*, Case No. 14-CV-149, *9, 10.

This case is also distinguishable from this Court's previous case, *Society of St. Vincent v. Amer. Textile*, Case No. 13-CV-14004 (E.D. Mich. 2013). There, the Court granted Plaintiff's Motion for Preliminary Injunction preventing the Defendant from removing donation bins that Plaintiff placed throughout the Eastern District of Michigan. In *Society of St. Vincent*, Plaintiff made various claims that included RICO violations, trespass to chattels, conversion, and tortious interference with business relationships. There, however, neither party claimed that there was an ordinance in place that purported to limit the placement of the bins. Additionally, regulation or removal of donations bins was not alleged to have been done by a municipality but by what Plaintiff claimed to be a competing organization.

12

*Jobe*, 490 F.3d at 267. First, the Defendant's zoning ordinance is content neutral, requiring all accessory structures to abide by the ordinance. Under the Defendant's Zoning Ordinance, all structures, with minor exceptions, require cite plan approval. **[Docket No. 11, p. 14]** Second, the Ordinance allows the Township to regulate communicative structures within its borders, which is a recognized legitimate purpose. *See City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994); *Prime Media, Inc. v. City of Brentwood*, *Tenn*, 398 F. 3d 814, 819 (6th Cir. 2005) (holding that a city was allowed to regulate the dimensions and placements of billboards to further the municipal interests of aesthetics and traffic safety). Third, the Ordinance is narrowly tailored because it furthers the governmental interest of making sure that accessory structures comply with existing health, safety, and welfare regulations, *see Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989), and provides Plaintiff with alternative routes to make sure that its donation bins comply with the zoning ordinance, none of which were utilized before filing this action. **[Docket No. 11, p. 16]** Plaintiff has not shown a likelihood of success on the merits of its claim that the Township's Ordinance violates its First Amendment right to solicit charitable contributions because in this case, Plaintiff's claim that the Ordinance bans all donation bins is unsupported. Enforcement of the Defendant's preexisting Ordinance may be shown to further a legitimate government interest, and the Ordinance appears

13

to include alternative means to secure the placement of contribution bins within the Township.

### b. Dormant Commerce Clause

Plaintiff alleges that the Defendant's zoning ordinance violates the Commerce Clause of the U.S. Constitution which gives Congress the power to regulate commerce among the several states. U.S. CONST. art. I, §8, cl. 3. The Dormant Commerce Clause allows states to regulate local issues as long as those regulations do not interfere with interstate commerce. *S. Pac. Co. v. State of Ariz. Ex rel. Sullivan*, 325 U.S. 761, 770 (1945). Plaintiff is unlikely to succeed on the merits of this claim because the Defendant's zoning ordinance does not place a complete ban on the donation bins used to solicit the Plaintiff's donations and, therefore, does not inhibit interstate commerce.

Plaintiff argues that the Defendant's zoning ordinance violates the Dormant Commerce Clause because it burdens interstate commerce, and this burden makes the zoning ordinance unconstitutional. **[Docket No. 4, p. 16-17]** The Plaintiff contends that the Zoning Ordinance burdens interstate commerce because the donated items are distributed and resold to other states and countries. **[Docket No. 4, p. 17-18]** The Plaintiff urges the Court to focus on whether the burden imposed by the zoning ordinance is excessive in light of the benefits it produces and whether the same

14

government interest can be promoted with a lesser impact on interstate activities. *Mason & Dixon Lines, Inc. v. Steudle*, 761 F. Supp. 2d 611, 626-27 (E.D. Mich, 2011); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The Plaintiff asserts the Defendant's restriction on donation bins "materially restricts the flow of commerce across state lines" by preventing the Plaintiff from soliciting charitable donations through its donation bins. **[Docket No. 4, p. 18]** This, Plaintiff claims, creates an undue burden that outweighs the benefits the Defendant receives from enforcing the zoning ordinance. **[Docket No. 4, p. 18-19]** The Plaintiff also argues that the ordinance favors in-state entities because permanent facilities that place donation bins indoors are not burdened by the regulation. **[Docket No. 4, p. 19]**

The Defendant reiterates that the enforcement of its zoning ordinance does not place an overarching ban on all outdoor donation bins. **[Docket No. 11, p. 21]** The Township argues that the Court should decide if the regulation violates the Dormant Commerce Clause by focusing on whether the regulation discriminates on its face against out of state interests. **[Docket No. 11, p. 20]** Defendant claims that the zoning requirements for accessory structures apply to all property owners within the Township, regardless of in state or out of state interests and that because there is no differential treatment, Plaintiff cannot succeed on this claim. **[Docket No. 11, p. 21]**

The Court determines that Plaintiff has not shown it is likely to succeed on the merits of its Dormant Commerce Clause claim because the Township's zoning ordinance does not specifically burden interstate commerce. To determine whether a law violates the Dormant Commerce Clause, the Court must look at whether the regulation discriminates on its face against interstate commerce. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgt. Auth.*, 550 U.S. 330, 338 (2007). The Defendant-Township's Zoning Ordinance appears to apply equally to all property owners within its boundaries. **[Docket No. 11, p. 21]** Plaintiff has not shown that the Ordinance is being enforced in a discriminatory fashion against out of state economic interests or owners of charitable donation bins. Without this showing, Plaintiff is not likely to succeed on the claim that the Defendant's zoning ordinance violates the Dormant Commerce Clause of the Constitution.

### c.  Impairment of Contracts

The Plaintiff claims that the Defendant's zoning ordinance violates the Contract Clause of the United States Constitution which provides that states should not pass laws that impair the obligation of contracts. U.S. Const. art. I, §10, cl. 1. The Plaintiff has not shown a strong likelihood of success on the merits of this claim because its contracts did not comply with Township's zoning laws at the time of their creation.

16

Plaintiff argues that the Ordinance interferes with contracts between the Plaintiff and property owners who were paid to place the Plaintiff's donation bins on their property. **[Docket No. 4, p. 11]** The purpose of the constitutional prohibition against the impairment of contracts is to prohibit states from impairing existing contractual obligations. *Home Bldg. & Loan Assoc. v. Blaisdell*, 290 U.S. 398, 428 (1934). Plaintiff relies on *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978), and urges the Court to consider whether the Ordinance operates as a substantial impairment of a contractual relationship and whether the Township's justification is a legitimate exercise of its police powers. *Id.* at 244. Plaintiff argues that the Ordinance affects two preexisting contracts that it has with Grenadier Properties Paint Creek and Hutton Management Services LLC, and that the Ordinance serves no greater public purpose. **[Docket No. 4, p. 12, Ex. 2]**

In response, Defendant argues that the contracts made between the Plaintiff and other property owners are invalid. **[Docket No. 11, p. 17-18]** The Defendant contends that in order to establish a violation of the Contract Clause, the Plaintiff must demonstrate that a change in state, and in this case Township law, has substantially impaired a contractual relationship. **[Docket No. 11, p. 17]** The Defendant relies on *Mascio v. Pub. Employees Ret. Sys. Of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998), which prompts the Court to determine if the Contract Clause has been

17

violated by deciding whether: (1) a contract exists; (2) a change in the law impairs the contract; and (3) the impairment is substantial. The Defendant argues that the Plaintiff did not create legal contracts to place donation bins in the Township because the placement of the donation bins did not receive site plan approval. **[Docket No. 11, p. 18]** Because the donation bins were negotiated and placed in a manner that may violate the Defendant-Township's zoning ordinance, the Defendant argues that the Plaintiff's contracts were illegal.

The Court determines that the Plaintiff is also unlikely to succeed on the merits of this claim because Plaintiff's entry into contractual agreements for placement of donation bins may be in violation of the Township's pre-existing Zoning Ordinance for accessory structures. The Court appreciates that Defendant did not strictly enforce the existing Ordinance, but Plaintiff has not argued that the Ordinance was not already in place at the time that any of the claimed contracts were signed. Relying on *Mascio*, the Court finds that Plaintiff has not shown that it is likely to succeed on this claim because any contracts for placement of donation bins between the Plaintiff and property owners may not have been in compliance with then-existing ordinances within the Township. There was no change in the law that affected the Plaintiff's agreements with property owners. The ordinance existed prior to any of the Plaintiff's contractual agreements or placement of its donation bins. Additionally,

18

there is no substantial impairment of the Plaintiff's contractual interests. Plaintiff has alternative means, as previously discussed, to secure the placement of its donation bins. Plaintiff has not shown it is likely to prevail on the merits of this claim.

### d.   42 U.S.C. § 1983

Lastly, Plaintiff claims that it has a cause of action against the Defendant pursuant to 42 U.S.C. §1983 and §1988 because the Defendant infringed on its constitutional rights. **[Docket No. 4, p. 19-20]** 42 U.S.C. §1983 allows citizens to hold liable any party that infringes on their constitutionally guaranteed rights. Plaintiff cites to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for its position that municipalities can be sued directly for implementing ordinances that are discriminatory. The Plaintiff asserts that the Zoning Ordinance bans all donation bins, thereby violating its constitutional rights. **[Docket No. 4, p. 20]**

In opposition, Defendant argues that the Ordinance does not place a ban on donation bins within the Township; therefore, there has been no violation of the Plaintiff's constitutional rights. **[Docket No. 11, p. 22]** Defendant contends that Plaintiff has failed to produce any portion of the Zoning Ordinance that explicitly bans donation bins. Defendant further argues that Plaintiff has not shown that it has made any effort to seek site plan approval and that, if it sought site plan approval, it

19

would be outright denied.[3]  Defendant contends that Plaintiff cannot prevail on this claim because the Ordinance does not deprive Plaintiff of any of its constitutional rights.

The Court determines that Plaintiff has not shown it is likely to succeed on the merits of this claim.  Plaintiff has not shown, on the information presented to the Court at this time, that the Zoning Ordinance bans all donation bins or that the Ordinance is being enforced in a discriminatory fashion against donation bins.  It is within the Defendant-Township's authority to produce zoning regulations for the public welfare so long as the regulation does not violate constitutions rights.  Plaintiff has not shown that it is likely to succeed in the merits of these claims.

### ii.    Irreparable Injury

In addition to the likelihood of success on the merits, the Court must consider whether the Plaintiff will suffer irreparable injury if the preliminary injunction is

---

[3] The Court notes that in its Motion, Plaintiff states that during a conversation between Mr. Hinterleiter and Officer Heppner, Heppner told Plaintiff that it "could apply [for site plan approval] but would most likely be denied by the Planning Commission." **[Docket No. 4, p. 7]** At the Court's hearing on this Motion, Defendant denied that this occurred and further stated that Officer Heppner did not have the authority to make such a statement.  Further, in its Response to Plaintiff's Motion, Defendant states that "[a]t no time did . . . any representative of the Township advise Mr. Hinterleiter that the Township had banned donation bins." **[Docket No. 11, p. 5]**

denied. The Court concludes that though Plaintiff has shown that it may suffer some injury, it has not shown that it will suffer an irreparable injury.

Plaintiff claims that it has no adequate remedy at law and will suffer irreparable harm if injunctive relief is not granted. **[Docket No. 4, p. 21]** The Plaintiff argues that the Defendant's infringement on its First Amendment right to free speech constitutes an irreparable injury that the Plaintiff will suffer indefinitely if the Defendant prevails in this case. Here, Plaintiff claims its injury is the prohibition of its ability to solicit charitable donations through its donation bins. Plaintiff argues that it does not have an adequate remedy at law because money damages will not remedy its indefinite deprivation from exercising its right to free speech by collecting charitable donations within the Township.

Defendant responds that Plaintiff does have an adequate remedy at law, which would require the Plaintiff to follow the procedures set forth in the Defendant-Township's zoning ordinance to seek site plan approval for its donation bins. **[Docket No. 11, p. 22-23]** Defendant argues that the Plaintiff did not try to receive approval for its donation bins before filing this action. **[Docket No. 11, p. 23]** Defendant contends that Plaintiff has not shown that it will suffer irreparable harm because Plaintiff has not presented any evidence that the Ordinance bans donation bins and, further, that the enforcement of the Zoning Ordinance only requires Plaintiff to follow

21

some procedures before placing the bins throughout the Township. Defendant asserts that Plaintiff's donation bins were set up illegally, in violation of the Township's zoning ordinance, and that the Court should not allow the Plaintiffs to benefit from this illegal activity.

It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Newsome v. Norris*, 888 F.3d 371, 378 (6th Cir. 1989). The Sixth Circuit Court of Appeals has stated that "solicitations to pay or contribute money, because they are so intertwined with speech, are entitled to protection under the First Amendment." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1481 (6th Cir. 1995) (citing *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 787-89 (1988).

Plaintiff has not shown that its constitutional rights, namely its First Amendment rights, have been violated by the enforcement of Defendant's Zoning Ordinance. Though the Court appreciates that it may become more difficult for Plaintiff to place bins within the Township and, further, that requiring property owners to apply for site plans creates an additional hurdle for both the property owners and for the Plaintiff that was not there before, the Court is not persuaded that Plaintiff's injury is irreparable as adequate remedies at law exist. Defendant's zoning

22

ordinance has procedures in place that would allow bin holders (through property owners) to apply for site plan approval or challenge the enforcement of the planning commission's decision to remove bins.  Because there are alternative measures that the Plaintiff could use to prevent the removal of its donation bins, the Court cannot find that the Plaintiff has suffered an irreparable injury.  Further, the Court notes that Plaintiff's claim for irreparable injury may be somewhat immature as at this point, Plaintiff has not applied for site approval and does not know whether efforts to seek site plan approval for its donation bins would be successful.  The Court determines that Plaintiff has not suffered an irreparable injury because the process in place to grant Plaintiff relief has not been fully explored by the Plaintiff.

### iii.    Substantial Harm To Others & Serving the Public Interest

Lastly, to be granted injunctive relief, the Plaintiff has to show that an injunction should be entered in order to prevent substantial harm to others and to serve the public interest.  The Court concludes that the Plaintiff has not made such a showing.

Here, Plaintiff argues that it is in the public interest to prevent the Defendant from violating its constitutional rights. **[Docket No. 4, p. 23]** Conversely, Defendant contends that Plaintiff's violation of the Zoning Ordinance constitutes a nuisance *per*

23

*se.* **[Docket No. 11, p. 24]** Further, Defendant argues that the Court should not grant the preliminary injunction because the Plaintiff's donation bins have not been reviewed for compliance with the Township's zoning ordinance. Defendant claims that compliance is necessary in order to make sure that all structures fit with public health, safety, and welfare regulations which are within its duty as a municipality to maintain and provide. Reviewing the pleadings, the Court is satisfied that though some harm may befall Plaintiff with the additional duty to seek site approval, the harm is not such that requires injunctive relief. The Court is also unpersuaded that the public interest is best served by circumventing the ordinances that a Township has in place when the ordinance has not been shown to be in violation of the constitutional rights of its constituents.

### III.      Conclusion

Determining that Plaintiff has not shown it is likely to succeed on the merits of its claims that Defendant's Zoning Ordinance is violative of its rights, accordingly,

**IT IS ORDERED** that Plaintiff's Motion for a Preliminary Injunction **[Docket No. 4, Filed April 14, 2014]** is **DENIED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: June 18, 2014

24

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 18, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager